IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | |
|---|---|
| ROBERT D. RIGGS, | Cause No. CV 11-80-BU-SEH-RKS |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| WARDEN LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondent. | |

_____

## I. Synopsis

Robert Riggs argues that he is entitled to habeas relief because of errors at his criminal trial and because he did not have effective trial or appellate counsel. Some of Mr. Riggs' claims may be procedurally barred because Mr. Riggs did not present them to the Montana Supreme Court. Regardless, his claims fail on the merits because they do not implicate a clearly-established right, and the alleged errors are unlikely to have affected the outcome of his trial.

1

## II. Status

On December 1, 2011, Petitioner Robert Riggs filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Riggs is a state prisoner proceeding pro se. On June 19, 2012, Respondent ("the State") was ordered to file certain documents from the state court's record. It complied on July 25, 2012. The petition is now before the court for a required preliminary screening.

**Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Consideration under Rule 4 "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his consideration if they are not yet included with the

petition." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

### III. Background

This case involved allegations of sexual abuse of four girls, all under the age of fourteen. In September 1999, a girl told her mother that Mr. Riggs touched her vagina while she was staying overnight with one of his stepdaughters. During the investigation of the incident, Mr. Riggs called the girl's mother and told her to "tell that lying little bitch daughter of yours to shut her mouth." 2 Trial Tr. at 281:25-282:1. He told an investigator he would not come in for an interview because "he had more to do than talk about some shit that some lying little kid was talking about or saying," or words to that effect. *Id.* at 329:13-15. He also told a deputy, "[I]f I was going to touch one of these children, don't you think I'd do it to my own? Don't you think I'd have a little more control over my own than an outsider?" 3 Trial Tr. at 573:22-25. He continued, "I mean, well, you know, if you think about it. I mean most children that get molested is in their house, you know, and like I told you, I was molested when I was young." *Id.* at 574:2-6. Because there was no corroboration of the girl's report, no charges were brought at that time.

In April 2001, Mr. Riggs's stepdaughter told a social worker that Mr. Riggs had sexually abused her. Investigation of that disclosure turned up two additional victims, who both asserted that Mr. Riggs had molested them between the fall of 2000 and spring of 2001. Charges were filed against Mr. Riggs as to all four girls. *See generally* Am. Information (doc. 9-6) at 1-2.

A five-day jury trial was held. The four girls testified. Two of their parents, three law enforcement officers, and a social worker testified about the way in which the allegations came to light and were investigated. A defense expert testified about the manner in which the investigation was conducted and factors an expert would consider in assessing the girls' credibility. Mr. and Mrs. Riggs both testified. The State called an expert in rebuttal. Mr. Riggs was convicted of two counts of sexual assault, one count of incest, and one count of sexual intercourse without consent. He was sentenced to serve 31 years in prison on each count, consecutive, with 25 years suspended, for a total of 24 years in prison and 25 years suspended. Mr. Riggs will not be eligible for parole until he completes sex offender treatment. Pet. (doc. 1) at 2-3 ¶¶ 1-6; Sentence and Judgment (doc. 9-19) at 2 ¶ 3, 7 ¶ 12.

Mr. Riggs appealed. He challenged the trial court's ruling that his expert could not sit in on the girls' testimony and could not testify as to their credibility. He also challenged the State's expert's rebuttal testimony and the limitation of his ability to

cross-examine her about her treatment of one of the girls as a therapist. He also challenged the trial court's denial of his motion to sever the charges, arguing that pretrial statements he made about one of the girls would not have been admissible in a trial involving the other three girls. Finally, he asserted that he was denied his right to be present at all critical stages of the trial. The Montana Supreme Court rejected his arguments and affirmed his convictions. *State v. Riggs*, 113 P.3d 281, 289 ¶ 55 (Mont. 2005).

Acting with new retained counsel, Mr. Riggs filed an amended postconviction petition. Some of his claims were dismissed without a hearing. After an evidentiary hearing on others, the trial court denied relief, and the Montana Supreme Court again affirmed the trial court. *Riggs v. State*, 264 P.3d 693, 705 ¶ 65 (Mont. 2011). Mr. Riggs timely filed his federal habeas petition on December 1, 2011. 28 U.S.C. § 2244(d)(1)(A).

### III. Mr. Riggs's Claims

Mr. Riggs's claims are taken in slightly different order than he presents them, but all are addressed.

Mr. Riggs alleges the trial court and the Montana Supreme Court violated his right to due process and demonstrated bias against him in six ways. First, Mr. Riggs was excluded from critical stages of the proceeding. Pet. at 5 ¶ 15A; Br. in Supp. at

1-16.  Second, law enforcement witnesses were permitted to testify that they found the girls credible.  Br. in Supp. at 17.  Third, Mr. Riggs's expert witness was not permitted to testify to the girls' lack of credibility, and she was excluded from the courtroom while the victims testified.  Fourth, the State's expert witness was permitted to bolster the girls' credibility while Mr. Riggs's cross-examination of her was limited.  Pet. at 6-7 ¶¶ 15B-15C; Br. in Supp. at 16-21, 21-28.  Fifth, the trial court's manner of addressing his postconviction petition unfairly limited the evidence to be weighed, and the unrebutted testimony of Mr. Riggs's expert witness at his postconviction hearing did not "become fact."  Pet. at 9 ¶ 15E; Br. in Supp. at 28-40.  Sixth, Mr. Riggs was prohibited from using polygraph evidence, presumably favorable to him, at sentencing.  Br. in Supp. at iii.

Mr. Riggs also makes "80 plus" claims of ineffective assistance of trial and appellate counsel.  Pet. at 5 ¶ 15A, 7 ¶ 15D, 9 ¶ 15F; Br. in Supp. at 40-41.  These claims are further detailed below.

## IV. Analysis

Generally, a habeas petitioner must first present to the state courts the facts and the basis in federal law of each individual claim he presents in his habeas petition. *Rose v. Lundy*, 455 U.S. 509, 520 (1982).  The federal court then defers to the state courts' resolution of those claims, 28 U.S.C. § 2254(d).  Mr. Riggs presented some of

his federal petition's claims on direct appeal or on postconviction appeal to the Montana Supreme Court.[1]  He did not, however, present his claims regarding witnesses' comments on the girls' credibility, the polygraph evidence, ineffective assistance of trial and appellate counsel specifically with respect to his right to be present at sidebars and at colloquies with two jurors, the trial court's manner of addressing his postconviction petition, and the remainder of the "80 plus" claims of ineffective assistance of trial and appellate counsel in his state postconviction petition.

As to the claims he presented, it is unclear whether the Montana Supreme Court considered federal law in deciding each claim.  It does not appear the court addressed counsel's waiver of Mr. Riggs's right to be present.  A case questioning whether the stringent standards of 28 U.S.C. § 2254(d) apply in such an instance is pending before the United States Supreme Court.  *See Johnson v. Williams*, No. 11-465 (U.S. argued Oct. 3, 2012).  As to the claims Mr. Riggs did not raise in the Montana courts, *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1317, 1320 (2012), might excuse his procedural default of one or more claims.  The Supreme Court will also be clarifying

---

[1]  On direct appeal, Mr. Riggs presented his claims regarding the expert witnesses and his right to be present. *Riggs*, 113 P.3d at 283 ¶¶ 3-4, 5.  On postconviction appeal, he presented claims of ineffective assistance relating to trial counsel's failure to interview or prepare witnesses, failure to object to amendment of the charge, decisions in voir dire, failure to object to admission of Mr. Riggs's pretrial statements and the girls' prior consistent statements, and waiver of Mr. Riggs's right to be present. *See* Postconviction Appellant Br. (doc. 9-46) at 1, 41.

the application of *Martinez* this Term. *See Trevino v. Thaler*, No. 11-10189 (U.S. argument set for Feb. 25, 2013).

Because there are more uncertainties involved in application of these potential procedural bars, it is more efficient to address Mr. Riggs's claims on the merits. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983). To avoid placing any undue burden on Mr. Riggs under § 2254(d) pending the Supreme Court's decision in *Williams*, his claims are addressed *de novo*, *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2007) (en banc).

### A. Right to Be Present

"[T]he right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983) (per curiam). "By the Court's limitation of this right to 'critical stages of the trial,' clearly, a criminal defendant does not have a fundamental right to be present at *all* stages of the trial." *La Crosse v. Kernan*, 244 F.3d 702, 707-08 (9th Cir. 2001). A stage is a "critical" one if "[the defendant's] presence would contribute to the fairness of the procedure," *Kentucky v. Stincer*, 482 U.S. 730, 740 (1987), that is, "whenever his presence has a relation, reasonably substantial, to the fulness of his

opportunity to defend against the charge," *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934). The defendant need not be present "when [his] presence would be useless, or the benefit but a shadow." *Id.* at 106-07. Further, the defendant may consent to exclusion, or counsel may waive the defendant's right to be present in person, even at a critical stage. *E.g.*, *Campbell v. Wood*, 18 F.3d 662, 670-72 (9th Cir. 1994) (en banc). Violation of the right to be present is not structural error but trial error subject to review for harmlessness, *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc), so that relief is not available unless the error had "a substantial and injurious effect or influence in determining the jury's verdict.'" *Renderos v. Ryan*, 469 F.3d 788, 798 (9th Cir. 2006) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and *Kotteakos v. United States*, 328 U.S. 750, 758 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).[2]

## 1. Conferences with Jurors

Mr. Riggs alleges that he was unconstitutionally excluded from two conferences with jurors and that counsel was ineffective in waiving his right to be present.

---

[2] Mr. Riggs claims the State had to prove his exclusion was harmless beyond a reasonable doubt. Br. in Supp. at 12 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). He is mistaken. *Fry*, 551 U.S. at 121-22; *Campbell*, 408 F.3d at 1172; *Hovey v. Ayers*, 458 F.3d 892, 903 (9th Cir. 2006). To whatever extent *State v. Matt*, 199 P.3d 244, 255-56 ¶ 44 (Mont. 2008), *cited in* Br. in Supp. at 12, 17, held otherwise under state law, the decision was reversed in *State v. Charlie*, 239 P.3d 934, 944-45 ¶¶ 43-47 (Mont. 2010). At any rate, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010) (per curiam).

Defense counsel Chuck Watson and the prosecutor were present for both conferences. In the first, a juror stated that his ability to be impartial was not undermined by the fact that one of the witnesses, a mother of one of the girls, was one among 90 students in a philosophy class he was teaching. 3 Trial Tr. at 501:6-504:19. In the second, the court advised another juror that he would not be asked to sacrifice airline tickets for a next-day departure, and the parties stipulated to seat the alternate in the event the trial continued into the next day. 5 Trial Tr. at 941:23-942:23, 957:23-958:18.[3]

Assuming, for the sake of argument,[4] that both conferences constituted a "critical stage" of the proceedings, Mr. Riggs's assertion of prejudice falls short. He avers that his personal exclusion "gives ri[]se to the notion of jury tampering" and means this Court cannot know "there was no inadvertent [g]estures or speech with this juror" or "that counsel was adv[o]cating for Riggs." Br. in Supp. at 8. He emphasizes that "the majority of the conversation with [the first juror] . . . was held off the

---

[3] In his Amended Postconviction Petition, Mr. Riggs claimed that the trial court gave a "dynamite instruction" by excusing the alternate juror after closing arguments. Am. PC Pet. at 37-38. The transcript does not, however, show the alternate was permanently excused immediately after closing arguments. 5 Trial Tr. at 1014:7-1015:17.

[4] Because the first conference occurred after the jury had been excused but before court adjourned for a lunch recess, it seems likely that Mr. Riggs was, in fact, present in person at the first conference. By contrast, at the second conference, the trial court pointed out that only counsel, the clerk, and the court reporter – not the defendant – were present. *Compare* 3 Trial Tr. at 501:5-504:20 *with* 5 Trial Tr. at 941:22-24. But no determination is made on that issue.

record," because the bailiff and possibly the court clerk spoke with the juror. *Id.*

These suggestions are baseless. Bailiffs and court clerks must interact with jurors. They almost always do so off the record. That is no reason to assume they are engaged in jury-tampering. As to the trial court's conferences with each juror, the record shows there was neither tampering nor "inadvertent speech,"[5] and counsel participated on behalf of Mr. Riggs. This claim should be denied. *Smith v. Curry*, 580 F.3d 1071, 1085 (9th Cir. 2009).

### 2. Sidebars

Mr. Riggs was not personally included in several brief, off-the-record sidebars held in the midst of trial. On those occasions, the context shows the parties were addressing an issue of procedure, such as admissibility or the parameters of an order *in limine*. *E.g.*, 2 Trial Tr. at 275:3-22 (defense counsel ensures he may ask the witness about what another witness, yet to testify, reported). When the legal issue could not be resolved at sidebar, the jury was excused, and the matter was put on the record. *E.g.*, 3 Trial Tr. at 504:22-505:21, 4 Trial Tr. at 678:24-679:23. This procedure was routine and unremarkable. A defendant does not have a constitutional right to be present in person when a legal issue is presented. *See, e.g.*, Fed. R. Crim.

---

[5] Inadvertent gestures would not appear in the record. But the fact the record does not reflect anything unusual is not a coherent basis for suggesting something unusual occurred.

P. 43(b)(3) (defendant need not be present when "[t]he proceeding involves only a conference or hearing on a question of law."). This claim should be denied.

### 3. Ineffective Assistance of Trial Counsel

Mr. Riggs also claims that Watson should not have waived Mr. Riggs's right to be present in person. But because Mr. Riggs does not identify any effect on the verdict, he also cannot show "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See also Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009) (citing *Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006)) (construing "substantial and injurious effect" as equivalent to "reasonable probability" of a different result). This claim should be denied.

### 4. Ineffective Assistance of Appellate Counsel

Mr. Riggs also claims that appellate counsel was ineffective because he failed to fully brief this issue on direct appeal. Appellate counsel briefed the conferences with jurors on direct appeal, but there is no merit in the issue in any case. This claim should be denied.

### B. Commentary on Witnesses' Credibility

Mr. Riggs claims Detective Hanson, Lieutenant Robinson, and other officers were all asked whether they found the girls to be telling the truth, and all answered in

the affirmative. Br. in Supp. at 17. None were asked that question. None testified to believing all or any of the girls. 2 Trial Tr. at 269:3-276:20 (Crawford); *id.* at 292:5-334:4, 4 Trial Tr. at 829:11-838:4 (Robinson); 3 Trial Tr. at 437:14-453:17 (Frandsen, a social worker), 557:23-589:3 (Hanson).[6] Only the girls themselves said the offenses occurred. This claim should be denied.

### C. Defense Expert

Mr. Riggs employed Dr. Sarah Baxter as an expert witness. He asked the trial court to allow her to watch the victims' testimony at trial. She was permitted to testify about the manner in which the investigation was conducted but not about the girls' credibility. Consequently, she was permitted to remain in the courtroom to hear the lead detective's testimony but was otherwise excluded, pursuant to Mont. R. Evid. 615.

Mr. Riggs relies on Montana cases permitting the State to introduce in its case-in-chief expert testimony that a child victim is credible. *See State v. Geyman*, 729 P.2d 475, 479 (Mont. 1986) (affirming admission of two experts' opinions that the child victim was sexually abused); *see also, e.g.*, *State v. Whitlow*, 949 P.2d 239, 247-48 (Mont. 1997) (affirming admission of Dr. Baxter's testimony that child victim

---

[6] Watson asked Hanson whether he thought the girls were all coordinating their statements, and Hanson testified he did not. 3 Trial Tr. at 588:21-23. This testimony was harmless, for reasons explained in Part IV.D.

"was very credible" where victim initially said a woman assaulted her, then began referring to male stranger, then, more than five months later, said it was the defendant).

The State did not introduce such testimony in this case; nor, as set forth above, did it ask its fact witnesses whether the girls were credible. But Mr. Riggs argues that he, as a defendant, should have the same opportunity as the State to present expert testimony that a child victim is *not* credible, regardless of whether the State chooses to take advantage of the *Geyman* line of authority. If the Montana courts arbitrarily deprived Mr. Riggs of something he was clearly entitled to under state law, he might have a point. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000). He argues, however, for an *extension* of Montana law. A federal habeas court cannot create new state law.

Alternatively, Mr. Riggs might obtain relief if prohibiting him from offering expert testimony to question the girls' credibility violated his federal constitutional right to present a defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). While States have "broad latitude" to establish and enforce their own rules of evidence, *United States v. Scheffer*, 523 U.S. 303, 308 (1998), those rules must not "infringe[] upon a weighty interest of the accused" or be "arbitrary" or "disproportionate to the purposes they are

14

designed to serve," *id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)).[7] *Scheffer*, however, makes it clear that Mr. Riggs cannot sustain this theory either. There, the defendant objected to a rule prohibiting him from introducing a polygraph showing he truthfully denied engaging in the conduct alleged against him. The United States Supreme Court held that "expert opinion testimony" going to credibility "does not implicate any significant interest of the accused." *Scheffer*, 523 U.S. at 316-17. A polygraph, the Court said, "is merely the opinion of a witness with no knowledge about any of the facts surrounding the alleged crime, concerning whether the defendant spoke truthfully or deceptively on another occasion." *Id.* at 317 n.13. The same is true here. Had Dr. Baxter testified as to the girls' credibility, the jury would simply have been presented with "another opinion, in addition to its own, about whether the witness was telling the truth." *Id.* at 313. The United States Constitution does not require that she be permitted to present that testimony.

Further, there was no inequity between the State and the defense. The State was

---

[7] *See, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319, 328-29 (2006) (defendant denied due process where state rule precluded him from introducing evidence to implicate third party); *Rock*, 483 U.S. at 61 (defendant denied due process where state rule precluded all hypnotically refreshed testimony, absent showing that all such testimony was invalid); *Crane*, 476 U.S. at 691 (defendant denied due process where state rule precluded defendant from offering evidence to show confession was not voluntary); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (defendant denied due process where state rule precluded defense from impeaching its own witness); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967) (defendant denied due process where state rule precluded defense from calling as a witness a person already convicted of the same crime).

not permitted to introduce expert opinion that Mr. and Mrs. Riggs were not credible when they testified. Mr. Riggs was permitted to introduce testimony from Dr. Baxter to assist the jury in *assessing* the girls' credibility, and the State was permitted to rebut that testimony. It is impossible to conclude that Mr. Riggs's ability to present legitimate evidence of his innocence was impaired or his trial was unfair merely because Dr. Baxter was not permitted to offer an opinion on the girls' credibility.

This claim should be denied.

## D. State's Expert

The State's expert, Dr. Gina Bellante, was called to rebut Dr. Baxter's testimony. Before reviewing the investigative file, Dr. Bellante served as a therapist to one of the victims. Mr. Riggs was not permitted to ask Dr. Bellante about the nature of the therapy provided, the nature or closeness of her relationship with her client, or what Dr. Bellante knew about the case prior to reviewing the paper trail of the investigation. All of those matters would have involved exploration of the therapist-client relationship, and the client had not waived her privilege. Mr. Riggs claims the trial court erred by precluding him from cross-examining Dr. Bellante about that relationship.

The jury knew that Dr. Bellante treated one of the girls and was paid for that treatment. 4 Trial Tr. at 849:16-852:12, 874:22-877:22; 5 Trial Tr. at 907:8-911:19,

920:21-922:20, 925:3-926:18.  The jury could infer that Dr. Bellante had some bias.

There was no violation of federal law in leaving the weighing of these points to the

jury.

Dr. Bellante testified about the girls' credibility.  Referring to the girls as "a

group of kids who all may manifest range of impairment from under socialized, low

self-esteem, immature, [or] naive" – impairments which were not in evidence – she

stated it was "highly improbable" that they conspired to accuse Mr. Riggs.  *See* 4 Trial

Tr. at 885:15-887:9.  But "[a] successful petition for collateral relief rooted in a claim

of trial error must demonstrate actual prejudice, that is, a 'substantial and injurious

effect or influence in determining the jury's verdict.'"  *Renderos*, 469 F.3d at 798;

*Fry*, 551 U.S. at 121-22.  Whether Dr. Bellante testified or not, a conspiracy theory

probably would not have been plausible to a reasonable juror.  Even Mr. Riggs did not

suggest the girls conspired.  He claimed that one may have been abused by someone

else, one and possibly two honestly did not know anymore whether anything

happened to them or not, and two of them were lying.  *E.g.*, 5 Trial Tr. at 984:5-15,

987:17-19, 990:23-991:3, 992:4-13, 993:22-995:3, 1001:7-1002:8, 1004:2-1005:12.

If there was error in admitting Dr. Bellante's conclusion that conspiracy was unlikely,

there was no harm in it.  There is no reasonable probability the verdict would have

been different if only Dr. Bellante had not offered an unsolicited opinion.

17

This claim should be denied.

**E. Polygraph Evidence**

Mr. Riggs complains that he complied with a court order to obtain a sex-offender evaluation, but because the evaluation included a polygraph examination, he was unable to use the resulting and presumably favorable evaluation. Br. in Supp. at iii. But, as explained above, the Supreme Court has held that polygraph evidence may constitutionally be proscribed. *Scheffer*, 523 U.S. at 309. This claim, to the extent it is one, should be denied.

**F. Expert Testimony in Postconviction Proceedings**

Mr. Riggs alleges that testimony from his expert at the postconviction hearing was unrebutted and so "should have become fact by law." Pet. at 9 ¶ 15E. Expert testimony on attorney ineffectiveness is not required because judges generally understand what attorneys should and should not do. *E.g.*, *Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010) (per curiam). There is no law holding that unrebutted testimony of any kind "become[s] fact by law." Mr. Riggs relies on a state rule of evidence addressing presumptions, Br. in Supp. at 36, but only one presumption was at issue in his case: a criminal judgment is presumed valid, *e.g.*, *State v. Benn*, 274 P.3d 47, 51 ¶ 12 (Mont. 2012). The party seeking to have that judgment vacated in postconviction proceedings has the burden of overcoming that presumption. *E.g.*,

*State v. Godfrey*, 203 P.3d 834, 836 ¶ 13 (Mont. 2009); *Kills On Top v. State*, 928 P.2d 182, 188 (Mont. 1996). Mr. Riggs simply failed to persuade the trial court. This claim should be denied.

### G. Postconviction "Claim" of Ineffective Assistance of Counsel

Mr. Riggs challenges the trial court's manner of dealing with his claims – or "claim," as he insists, Br. in Supp. at 31 – of ineffective assistance of counsel. In a 70-page order, the trial court discussed each and every one of Mr. Riggs's "examples" of ineffective assistance to determine whether the claim was procedurally barred under state law, *see* Mont. Code Ann. § 46-21-105(2) (1997), whether it met the pleading standard imposed by state law, *see id.* § -104(2), and whether it had sufficient substance to warrant further consideration. Mr. Riggs asserts that this procedure violated state law and unfairly "skew[ed] the evidence in favor of the State at the [postconviction] hearing," Br. in Supp. at 33, because he was not permitted to introduce most of his evidence showing ineffective assistance.

There was nothing contrary to federal law in this manner of proceeding. Each alleged instance of ineffective assistance must be analyzed "separately to determine whether . . . counsel was deficient, but prejudice may result from the cumulative impact of multiple deficiencies." *Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir. 2005) (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc),

19

and citing *Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir. 1995)).[8]

In other words, while there is such a thing as cumulative prejudice, there is no such thing as cumulative deficient performance. The trial court's manner of analyzing Mr. Riggs's claims was consistent with federal law.

Mr. Riggs also claims the trial court's approach was inconsistent with state law, which speaks only of a "petition" and not of "claims." *E.g.*, Mont. Code Ann. §§ 46-21-201(1)(a) (2001). Mr. Riggs is not entitled to federal habeas relief because state law does not unquestionably require the trial court to take the "all or nothing" approach. But the Montana Supreme Court does not read the word "petition" as narrowly as Mr. Riggs suggests. In *Kills on Top v. State*, 901 P.2d 1368, 1374 (Mont. 1995), the trial court followed the same procedure to which Mr. Riggs objects here. The Montana Supreme Court, rather than adopting Mr. Riggs's position, affirmed the dismissal or denial of some claims and remanded others for further proceedings. *Id.* at 1390. This is a routine procedure, despite use of the word "petition" in Mont. Code Ann. § 46-21-203 (authorizing either party to appeal "from an order entered on a

---

[8] Claims of ineffective assistance of trial and appellate counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. The same test applies under Montana law. *E.g.*, *State v. Mitchell*, 286 P.3d 1196, 1200 ¶ 21 (Mont. 2012).

petition"). This Court has not located any case that supports Mr. Riggs's interpretation of Montana law, and he does not cite one. Nor does reading such words as "petition" or "application" to mean "claim" violate federal due process. *See, e.g.*, *Mardesich v. Cate*, 668 F.3d 1164, 1169-71 (9th Cir. 2012); *Hill v. Alaska*, 297 F.3d 895, 898-99 (9th Cir. 2002).

Mr. Riggs appears to seek review of his "80 plus" allegations of ineffective assistance only if this Court agrees the trial court's procedure was defective. It was not. But, even if Mr. Riggs's federal petition is liberally construed to re-allege those claims, they do not entitle him to habeas relief. The trial transcript shows that Mr. Riggs's testimony, and to a lesser extent Mrs. Riggs's, were the crucial elements in the conviction. *See* 4 Trial Tr. at 692:17-827:20. And Mr. Riggs failed to show any competent defense attorney could have presented better testimony from them.

At the postconviction hearing, the former Mrs. Riggs, now Ms. Hill, testified that she and Mr. Riggs were "crazy," "using meth," "looking for meth," "drinking a lot of alcohol," "stealing," and "doing a lot of things" during the time leading up to trial. 2 Postconviction Hr'g at 411:9-22. Asked whether they ever "fell out of contact with Mr. Watson," Ms. Hill responded, "Well, I think we were really busy tweaking and getting meth and finding meth and drinking, running. Running from everything." *Id.* at 412:20-413:1. This testimony is highly credible in light of the trial transcript.

It explains Mr. Riggs's pre-trial statements significantly better than his trial testimony did, and Mr. Riggs's rebuttal of Ms. Hill's testimony at the postconviction hearing was at best equivocal. *Id.* at 470:11-472:12. Ms. Hill testified that Mr. Riggs would not have pled guilty, *id.* at 421:24-422:8, as did Watson, 1 Postconviction Hr'g at 107:21-108:12. Mr. Riggs testified in rebuttal that he "would have considered anything that was on the table," 2 Postconviction Hr'g at 458:18-459:1, but that does not amount even to a reasonable probability he was actually willing to plead guilty. Nor has Mr. Riggs ever claimed he might have been persuaded not to testify. *See, e.g.*, Amended Postconviction Pet. ("Am. PC Pet.") at 43 (artfully not claiming this). At any rate, it was virtually mandatory he should explain or somehow soften for the jury his "brutal and aggressive" statements to investigators and one girl's mother. The Montana Supreme Court held that state law provided no basis for excluding Mr. Riggs's own statements. *Riggs*, 264 P.3d at 704-05 ¶¶ 55-63. Federal law provided none. *See, e.g.*, *United States v. Sanders*, 421 F.3d 1044, 1047-49 (9th Cir. 2005) (affirming admission of defendant's statements even though they were not against interest).[9] No doubt Mr. Riggs's own testimony was very damaging. But there is no reasonable probability any attorney could have presented the jury with a better

---

[9] In 2011, Fed. R. Evid. 801(d)(2) was amended to replace the word "admission" with "statement," because "a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." The committee also stated that "[n]o change in application of the exclusion is intended." Fed. R. Evid. 801 advisory committee's note (2011).

defendant.

Consequently, claims that Watson should have impeached the girls with additional or better (and mostly speculative) evidence, *see* Am. PC Pet. at 16-22 ¶¶ 1(c)-(k), 49-50 ¶ 14(b), 51-52 ¶ 17,[10] do not show sufficient prejudice, even if one considers the cumulative effect of the few items that actually did exist. Despite claiming there were other percipient witnesses, Mr. Riggs produced no one ("Abbey," "Jessica," "a guy named Brian," Am. PC Pet. at 11 ¶ 1(a), 15 ¶ 1(b)), whose testimony was credible (C.G. and D.R. were not, 1 Postconviction Hr'g at 25:12-63:18), favorable (the "two triplets," 2 Postconviction Hr'g at 389:8-25, 406:13-407:4, 408:16-409:4,[11] and K.H. and C. Riggs, Am. PC Pet. at 11, were not), and admissible (Sullivan's, Am. PC Pet. at 14-16, was not).[12] Watson used the girls' prior statements to demonstrate inconsistencies to the jury. Am. PC Pet. at 22-27 ¶ 2. He could not

---

[10] In a single paragraph, Mr. Riggs first contends that Watson should have asked Deputy Hanson to state his opinion of the girl's credibility in the first investigation, then claims he made a serious error by asking Hanson's opinion about the second investigation because Hanson was not "an expert." Am. PC Pet. at 20 ¶ 1(d).

[11] One of the girls was one of three triplets; her two sisters, who were not involved in the case, are referred to in the record as "the two triplets." In the cited testimony, one of the two triplets said she believed her sister and the first girl who reported abuse, and the other said she probably would have lied by claiming she did not believe her sister when she did. A lawyer's failure to call a witness who says she would not have told the truth is hardly deficient performance; as to prejudice, jurors see through false testimony.

[12] In addition, there are "obvious countervailing tactical dangers" in presenting evidence of the sexual activity of girls under the age of 14 to defend an adult client charged with engaging in such activity with them. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1035 (9th Cir. 1997) (counsel need not pursue evidence that is "a basket of cobras").

have done that if he objected to their admission, and he reasonably wanted the jury to hear the inconsistencies. Mrs. Riggs's damning e-mail to her daughter showed bias in favor of Mr. Riggs and so was relevant to credibility, particularly after Mrs. Riggs claimed she told her daughter she loved her. *Compare* Am. PC Pet. at 44 *with* 4 Trial Tr. at 751:22-755:25. Though Boggs differed sharply with Watson over the seating of Juror Donahue, there was nothing unreasonable about Watson's assessment that Donahue was an acceptable juror. 1 Postconviction Hr'g at 134:1-138:11. Potential juror Klein was thoroughly questioned, and a challenge for cause was not supported. *Compare* Am. PC Pet. at 35 ¶ 5(a) *with* 1 Trial Tr. at 119:13-143:25. Opposition to amendment of the Information would have been futile. *Compare* Am. PC Pet. at 55-56 ¶ 21 *with* Aff. in Supp. of Mot. for Leave to File (doc. 9-1) at 8-9 ¶ 19. Mr. Riggs failed to show how Dr. Baxter's opinion would have been strengthened had she known of allegedly undisclosed materials, Am. PC Pet. at 48 ¶ 14(a), and failed to show what Dr. Baxter would have said had she interviewed the girls, *id.* at 28-30 ¶¶ 3(c)-(d), (f), 47-48 ¶ 14(a).[13] Dr. Baxter and Dr. Bellante both dispelled prejudice from Mr. Riggs's statement to Deputy Hanson about his molestation as a child. 3

---

[13] Importantly, at trial the prosecution asked Dr. Baxter whether she had interviewed any members of Mr. Riggs's family. She said she had not. 4 Trial Tr. at 674:20-675:1. At sentencing, the prosecution called Mr. Riggs's sister, who testified that he abused her from the time she was six or seven until she was about nine or ten, when he moved out of the house. Sentencing Tr. at 40:7-10, 41:13-18.

Trial Tr. at 574:2-6; 4 Trial Tr. at 673:22-674:19, 869:24-871:25.  There is no reason to believe Watson could have compelled the girls to submit to an evaluation by Dr. Baxter or could have obtained their "psychological records."  They did not put their mental states at issue.  *Compare State v. Fina*, 902 P.2d 30, 35-36 (Mont. 1995), *with State v. Hess*, 828 P.2d 382, 386-88 (Mont. 1992).  Mr. Riggs's remaining claims are either so inconsequential or contrary to the record as not to require discussion, Am. PC Pet. at 31-32 (¶¶ 3(g), (i)), 39-42 (¶¶ 5(e), 6-8), 43-45 (¶ 10), 46 (¶ 12), 50 (¶ 15), 53-54 (¶¶ 18-20), 55-58 (¶¶ 21-23), or are repetitive of claims already addressed.

This claim, or these claims, should be denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Review of Mr. Riggs's claims in light of the state court record plainly

demonstrates that he is not entitled to relief. In particular, the testimony of Mr. Riggs himself, and to a lesser extent then-Mrs. Riggs, was the most damaging to the defense. Mr. Riggs does not even raise any claims with respect to his own testimony or his decision to press his case at trial. The facts would not support any. His right to be present at the trial court's two conferences with jurors and at sidebars was not violated, because Mr. Riggs's counsel was present and, at any rate, his personal absence had no effect on the verdict. Because there was no violation, neither trial nor appellate counsel was ineffective. The State did not ask any witness to comment on the girls' credibility. In response to cross-examination, two witnesses testified that it was unlikely all four girls deliberately coordinated their efforts or conspired against Mr. Riggs, but he did not claim they did, and a reasonable juror probably would not believe it anyway. There was no error in prohibiting the defense expert from testifying that the girls were not credible; she was permitted to testify about the manner in which the investigation was conducted and what an expert would look for in assessing the girls' credibility. There was no error in prohibiting Mr. Riggs from exploring the State's rebuttal expert on her therapeutic relationship with one of the girls; the jury knew the relationship existed and that the therapist might be biased as a result, but her testimony was (but for the one, harmless comment about conspiracy) confined to rebuttal of the defense expert's testimony. Mr. Riggs's objection that his

polygraph evidence was excluded does not allege a federal constitutional violation. Unrebutted expert testimony on attorney effectiveness does not "become fact." Finally, all of Mr. Riggs's claims of ineffective assistance of counsel simply fail to account for the prejudice created by his own and Mrs. Riggs's testimony.

The petition presents no open questions and nothing on which reasonable jurists could disagree. The law underlying the claims and their denial is well-established. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The Petition (doc. 1) should be DENIED on the merits.

2.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Riggs may file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  If Mr. Riggs files objections, he must itemize each factual finding to which objection is made and must identify the evidence

in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Mr. Riggs from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Riggs must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this case without notice to him.

DATED this 11th day of January, 2013.

 /s/ Keith Strong
Keith Strong
United States Magistrate Judge